**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| J&L WIRE CLOTH, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:25-cv-00217 |
| WALDROOP STEEL COMPANY & | § | |
| WALDROOP CONSTRUCTION | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF J&L WIRE CLOTH'S MOTION TO SHOW CAUSE

Plaintiff J&L Wire Cloth LLC's ("J&L") files this Motion to Show Cause (the "Motion") against Defendants Waldroop Steel Company and Waldroop Construction (collectively, "Defendants") for their failure to abide by the Court's October 15, 2025 Order (the "Order").[1]

## II.
## Relevant Background

This lawsuit arises out of an invoice that was sent by Defendants on November 5, 2024 (the "Invoice") for an alleged $2,749,506.25 worth of work that had allegedly been done by Defendants for J&L's construction project. Defendants stopped work based on this Invoice because Defendants believed a balance was owed for Defendants' work. Defendants also filed and placed a lien on J&L's property based on the Invoice,[2] and Defendant Waldroop Construction filed a counterclaim based on this Invoice in the full amount of $2,749,506.25.[3] J&L has disputed this work was ever done and that these expenses were actually incurred. J&L demanded substantiating

---

[1] [Dkt. 29].
[2] *See* Exhibit 1 (March 5, 2025 Mechanic's Lien); [Dkt. 14, ¶32-40].
[3] [Dkt. 14].

documents showing this work was actually completed. Tellingly, Defendnats have had issues coming forward with the alleged supporting documentation.

On June 10, 2025, J&L formally requested all invoices for work allegedly done on the project.[4] On July 11, 2025, Defendants responded and produced zero invoices. After multiple attempts at conferring J&L only received $11,000 worth of invoices to support the Invoice which was $2,749,506.25. This inadequate production and numerous unsuccessful conferrals between counsel resulted in J&L filing a motion to compel.

At the hearing, J&L highlighted how Defendants had not produced all invoices for the alleged work completed prior to the Invoice. Neither side disputed that the alleged invoices backing up this document were relevant to the parties claims and defenses and should be produced. The Order required Defendants to produce <u>all</u> invoices supporting the parties' claims and defenses by Tuesday, October 28, 2025.[5]

On October 23, 2025, Defendants produced additional invoices bringing the new total of produced invoices to $460,744.02.

On October 28, 2025, Defendants did not produce any additional invoices.

On October 29, 2025, J&L followed up with Defendants requesting Defendants enter into a stipulation that all invoices had been produced under the Order.[6] Defendants did not respond to this request.

---

[4] Exhibit 2, First Set of Requests for Production to Waldroop Construction Nos. 1, 2, 7, 8, and 9.
[5] [Dkt. 29].
[6] *See* Exhibit 3, p. 5-6

On October 31, 2025, J&L followed up on its attempt to resolve the issue without having to seek further Court intervention.[7] Defendants responded that same day stating they received additional documents from their client, will produce them that day, and that would be all invoices.[8]

Now three days after the Court ordered deadline, Defendants produced an additional $15,645.80 worth of invoices.

> From: Shilah Kaska
> Sent: Friday, October 31, 2025 4:10 PM
> To: 'Colin Minx' <colin.minx@nelsonmullins.com>
> Cc: Hillary Clark <hclark@billkennedylaw.com>; Ryan Weger <Ryan@billkennedylaw.com>; Cheyenne Floyd <Cheyenne@billkennedylaw.com>; Bill Kennedy <bill@billkennedylaw.com>
> Subject: RE: 4:25-CV-00217 J&L Wire Cloth, LLC v Waldroop Steel Company & Waldroop Construction
>
> Colin,
>
> Please see additional production for defendant.
>
> Best Regards,

[9]

On Monday November 3, 2025, Defendants requested another extension of time to produce more documents, which J&L agreed to in hopes it would resolve the problem without needing to again go before the Court, again.[10]

On November 5, 2025, Defendants produced additional documents but these were only bank records and not additional invoices.

On November 7, 2025, J&L again requested Defendants enter into an updated stipulation to finally end the stonewalling and drawn-out process of document production.[11]

---

[7] *See* Exhibit 3, p. 4-5
[8] *See* Exhibit 3, p. 4
[9] *See* Exhibit 3, p. 7
[10] *See* Exhibit 3, p. 7
[11] *See* Exhibit 3, p. 3-4

4932-5152-7290

On November 10, 2025, Defendants informed J&L they have reached out to their client to confirm all invoices have been produced.[12]

On November 11, 2025, J&L requested for Defendants to stipulate all documents required under the Order have been produced.[13]

In response, Defendants agreed this should be something they could do.[14]

> **From:** Ryan Weger <Ryan@billkennedylaw.com>
> **Sent:** Tuesday, November 11, 2025 2:41 PM
> **To:** Colin Minx
> **Cc:** Anel Valdez; Hillary Clark; Cheyenne Floyd; Shilah Kaska; Craig Dillard; Bill Kennedy; Jason Sharp; Shilah Kaska
> **Subject:** RE: RE: CV-24-1604; J&L Wire Cloth, LLC v Waldroop Steel Company & Waldroop Construction
>
> **External Source/Sender notice**
> Use caution responding or clicking links/attachments.      Report Suspicious
>
> I do not disagree. I have sent an email to the client and I am just waiting to hear back . I will follow-up today and let him know it is urgent.

[15]

On November 24, 2025, J&L followed up on Defendants' previous email.[16] Defendants responded by stating they had produced "all responsive documents in their possession" but also stated they "believe additional invoices exist but we are waiting on responses"[17] This is another attempt to stonewall J&L from pursuing its claims and place the case on pause for an indefinite period of time until unidentified third parties produce allegedly relevant invoices. Yet, Defendants do not identify which invoices are still outstanding, the amounts, or who the invoices are from. Moreover, Defendants forgoing position does not comply with the Order. Lastly, this delay in

---

[12] *See* Exhibit 3, p. 2-3
[13] *See* Exhibit 3, p. 2
[14] *See* Exhibit 3, p. 2
[15] *See* Exhibit 3, p. 2
[16] *See* Exhibit 3, p. 1
[17] *See* Exhibit 3, p. 1

production by Defendants is what resulted in the Parties having to extend the deadlines in the case by amending the docket control order.[18] If Defendants continue this position, it will only result in the case being continually extended.

Defendant Waldroop Construction Seconded Amended Answers to J&L's Interrogatories listed 13 different subcontractors who allegedly performed work on the project.[19] To date, J&L has only received invoices from 2 of the 13 alleged subcontractors. Defendants should be able to go subcontractor by subcontractor and list what work was done and how much the work cost. Indeed, Defendants submitted invoices for the alleged work performed and placed a lien on the property but inexplicably cannot produce the same documents. It is telling that Defendants are not able to do so and have refused to do so. Moreover, Defendants have had ample time over the past five months to produce these invoices but have consistently decided not to produce them, likely because these invoices do not exist, or worse Defendants have destroyed records in this case.

As shown above, J&L has worked with Defendants on the Court ordered production, but J&L is now being forced to file this motion because Defendants allege compliance with the Order but state additional invoices exist and will be produced beyond the Court ordered deadline. Court intervention is necessary—**for a second time**—to end Defendants' approach to producing documents at their leisure.

## II.
## Argument and Authorities

**A.** **The Court should require Defendants to show cause for why the Court should not hold Defendants in contempt for their violation of the Order.**

Under the Federal Rules of Civil Procedure, violation of a discovery order may result in sanctions, including holding the disobedient party in contempt of court. FED R. CIV.

---

[18] [Dkt. 34].
[19] Exhibit 4, Waldroop Constructions Second Amended Interrogatory Answers to J&L's First Set of Interrogatories.

4932-5152-7290

P.37(b)(2)(A)(vii). "A party may be held in contempt if he violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts with knowledge of that order." *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir. 1987). To prove that Defendants should be held in civil contempt, J&L must establish by clear and convincing evidence that (1) a court order was in effect; (2) the order required specified conduct by Defendants; and (3) Defendants failed to comply with the order. *See U.S. v. City of Jackson*, 359 F.3d 727, 731 (5th Cir. 2004); *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992). Furthermore, the movant only needs to show that the contemnor failed to comply with the court's order. *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000) (holding that intent of the nonmoving party is not considered when the court determines whether the nonmoving party violated the court's order); *Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.*, 609 F.2d 165, 168 (5th Cir. 1980) (same); *Whitfield*, 832 F.2d at 913 (same); *see also Chao v. Transocean Offshore*, 276 F.3d 725, 728 (5th Cir. 2002) ("[g]ood faith is not a defense to a civil contempt").

"Upon a finding of contempt, the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 582 (5th Cir. 2005). "Judicial sanctions in civil contempt proceedings, may in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *Allied Pilots*, 228 F.3d at 585. The Court's contempt power is "broad ...encompassing ... remedial powers 'determined by the requirements of full remedial relief,' as necessary 'to effect compliance with [the court's] decree.'" *In re Bradley*, 588 F.3d 254, 265 (5th Cir. 2009) (citations omitted). It includes the "'imposition of fines, the awarding of costs, and the shifting of fees.'" *Id*. (quoting *NASCO, Inc. v. Calcasieu Television & Radio, Inc*., 894 F.2d 696, 702 (5th Cir. 1990)).

The purpose of sanctions is to ensure the effectiveness of the discovery process. *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1126 (5th Cir. 1970). "A district court has 'broad discretion in all discovery matters', and 'such discretion will not be disturbed ordinarily unless there are unusual circumstances showing a clear abuse.' " *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000) (quoting *Wyatt v. Kaplan*, 686 F.2d 276, 283 (5th Cir. 1982)). This broad discretion extends to the imposition of discovery sanctions. *See Moore v. CITGO Ref. & Chemicals Co., L.P.*, 735 F.3d 309, 315 (5th Cir. 2013).

Defendants actions are in direct contradiction of this Court's Order and a textbook example of contempt. The Court required Defendants to produce <u>all</u> invoices by October 28, 2025.[20] As shown above, Defendants failed to produce the invoices by that deadline, continued to produce additional invoices after the deadline, and intend to produce even more invoices in the future. Defendants cannot have it both ways, either all invoices were produced, or Defendants have violated the Order and intend to continue to violate the Order. Importantly, Defendant Waldroop Construction has a counterclaim and lien based on these alleged invoices.[21] In order to even come up with the alleged numbers in the lien and counterclaim, Defendants necessarily had to base that on something. Not being able to produce all substantiating evidence indicates that these invoices may not even exist, especially after five months of being aware that these invoices must be produced. At this point either Defendants have made up the existence of these alleged supporting invoices or spoliation has occurred.

As of the date of this motion, Defendants have only produced $476,389.82 for the alleged $2,749,506.25 for work Defendants allegedly performed before stopping work and refusing to

---

[20] *Id.*
[21] *See* Exhibit 1 (March 5, 2025 Mechanic's Lien); [Dkt. 14, ¶32-40].

perform any additional work. Defendants failure to produce the remaining invoices is in direct violation of this Court's Order.

Importantly, Defendants admit there are other invoices that could exist and that may later be produced by Defendants, which they most certainly would rely on for their alleged counterclaim.[22] Defendants should not be allowed to place this case in limbo while the parties wait until some unidentified third parties produce allegedly relevant invoices after the Court's deadline. There needs to be a clear line that invoices produced after the Motion to Show Cause are in violation of the Order and J&L's extension and are not to be considered in this matter.[23]

Moreover, allowing Defendants to produce additional invoices after this Motion to Show Cause is filed will prejudice J&L in preparing for mediation, depositions, and trial. Defendants chose to feign compliance with the Order but leave open the possibility for future violations by late production. Therefore, there are ample grounds for the Court to order Defendants to appear before the Court to show cause as to why the Court should not hold Defendants in contempt for their violations of the Order, and the Court to stop Defendants from producing additional late invoices.

**B.      The Court should sanction Defendants for their violation of the Order.**

J&L additionally seeks sanctions against Defendants for these violations. The power to sanction, like contempt, exists to allow a court to enforce its orders by imposing a penalty for their violation. FED. R. CIV. P. 37. As this Court is aware, J&L already drafted, traveled, and argued on a motion to compel for this very issue. The Court's Order was clear, and Defendants still violated the Order. As such, sanctions are appropriate for this situation to deter further misconduct.

---

[22] *See* Exhibit 3, p. 1
[23] J&L offered an extension of time to this production in order to resolve this issue without having to go before the Court.

Additionally, the Court should prevent Defendants from being allowed to reference or use any invoice that was produced after the Motion to Show Cause is filed. Lastly, Defendants should compensate J&L for J&L's attorneys' fees incurred in connection with bringing this Motion and for enforcing the Order, costs J&L never would have had to incur if Defendants had complied with the clear language of the Order.

### Prayer for Relief

Based on the foregoing, J&L respectfully requests the following:

A. That this Court enter a Show Cause Order requiring a representative of Defendant Waldroop Steel and a representative of Waldroop Construction to appear before this Court and show cause as to why they should not be held in contempt for Defendants' disobedience of the Order.

B. Defendants Waldroop Steel and Waldroop Construction shall not be allowed to reference or use any invoice that was produced after the Motion to Show Cause is filed.

C. That the Court require Defendants to compensate J&L as a sanction for Defendants' violation of the Order.

D. That the Court require Defendants to compensate J&L for any costs it incurs in connection with Defendants' violation of the Order, including but not limited to attorneys' fees and other costs totaling.

E. J&L will submit a statement of the attorneys' fees and costs within fourteen (14) days of this Order's entry for the Court's consideration; and

F. all other legal or equitable relief rightfully owed to J&L.

DATED: November 26, 2025            Respectfully submitted,

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**

By: */s/ Craig D. Dillard*
    Craig D. Dillard
    Texas Bar No. 24040808
    Federal Bar No. 37591
    Jason Sharp
    Federal Bar No. 34717
    Texas Bar No. 24039170

>Colin F. Minx
>Texas Bar No. 24131039
>Federal Bar No. 3901591
>1111 Bagby Street, Suite 2100
>Houston, Texas 77002
>Telephone: (346) 646-6670
>Facsimile: (346) 241-3758
>Email: craig.dillard@nelsonmullins.com
>Email: jason.sharp@nelsonmullins.com
>Email: colin.minx@nelsonmullins.com

>**ATTORNEYS FOR PLAINTIFF**
>**J&L WIRE CLOTH LLC**

### CERTIFICATE OF CONFERENCE

This is to certify that J&L's counsel has complied with the meet and confer requirement in Local Rule CV-7(h); and the motion is opposed. The personal conferences required by this rule have been conducted via email on October 23, 2025; October 29, 2025; October 31, 2025; November 3, 2025; November 7, 2025; November 10, 2025; November 11, 2025; November 24, 2025. At numerous times prior to this motion J&L offered a stipulation to Defendants but Defendnats have refused to agree to it and continue to produce invoices after the Court deadline. Defendants have not provided any explanation for why all responsive documents have not been produced. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve. J&L's counsel made clear in its attempts attempt to confer that if Defendants failed to produce documents J&L would seek relief from the Court.

>*/s/ Craig D. Dillard*
>Craig D. Dillard

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served via the e-filing system upon all counsel of record this 26th day of November 2025.

>*/s/ Craig D. Dillard*
>Craig D. Dillard

4932-5152-7290